UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

RUTH ANDERSEN,
MYRON ANDERSEN, and
AF FUNDS MONTANA LLC,

    Plaintiffs,

v.                                 CAUSE NO. 3:16CV830-PPS

THOR MOTOR COACH, INC.,

    Defendant.

## OPINION AND ORDER

Defendant Thor Motor Coach moves to exclude the opinions of Tom Bailey, whom plaintiffs offer principally as an expert about the diminished value of a new RV they bought from Thor that the plaintiffs claim was riddled with defects. Before getting into the substance of Bailey's opinions and his qualifications to render them, I'll start with some basics about the rules governing the admissibility of expert testimony.

Federal Rule of Evidence 702 states, in relevant part, that a "witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue." Fed. R. Evid. 702. The Rule "also requires that: (1) the testimony must be based upon sufficient facts or data; (2) it must be the product of reliable principles and methods; and (3) the witness must have applied the principles

and methods reliably to the facts of the case." *Happel v. Walmart Stores, Inc.*, 602 F.3d 820, 824 (7th Cir. 2010).

The district court must perform a "gatekeeping" function before admitting scientific testimony in order to ensure that "all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). As a threshold matter, the district court must determine (1) whether the expert would testify to valid scientific knowledge, and (2) whether that testimony would assist the trier of fact with a fact at issue. *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000).

The first step is to analyze the reliability of the expert. In doing so, the role of the court is to determine whether the expert is qualified in the relevant field and to examine the methodology the expert has used in reaching his conclusions. *Id.* Rule 702 contemplates that an expert may be qualified by "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Thus, in determining whether a proposed expert is qualified, a court may consider the proposed expert's full range of practical experience, as well as academic or technical training. *Smith*, 215 F.3d at 718. But "even a supremely qualified expert cannot waltz into the courtroom and render opinions unless those opinions are based upon some recognized scientific method." *Id.* (internal quotation marks and brackets omitted). This means that a court "must rule out subjective belief or unsupported speculation." *Cummins v. Lyle Indus.*, 93 F.3d 362, 368 (7th Cir. 1996) (internal quotation marks omitted).

In *Daubert*, the Supreme Court identified four factors that are pertinent to the reliability inquiry: (1) whether the theory has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) whether it has been generally accepted within the relevant scientific community. 509 U.S. at 593-94. The inquiry is flexible and must focus solely on the principles and methodologies, not the conclusions they generate. *Id.* at 594. No single factor is either required in the analysis or dispositive as to the outcome. *See Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 141 (1999). Expert testimony from technical fields is subject to the same "concerns and criteria" as scientific expert opinion, but the Supreme Court has explained that with technical testimony the "gatekeeper" function of the court adjusts "to fit the facts of the particular case at issue, with the goal of testing the reliability of the expert opinion." *United States v. Brumley*, 217 F.3d 905, 911 (7th Cir. 2000) (citing *Kumho Tire Co.*, 526 U.S. 137, 149 (1999)).

If the district court is satisfied that the expert's testimony is reliable, the next step is to determine whether the testimony is relevant. In making this determination, the court must consider whether the testimony assists the trier of fact in understanding the evidence or in determining a fact at issue. *Cummins*, 93 F.3d at 368.

First, I note that Thor does not question whether Bailey is qualified to give expert valuation testimony. This may be, in part, because Thor has itself used Bailey as an expert in other litigation, as plaintiffs are fond of pointing out and Thor does not dispute. [DE 33 at 1,3; DE 33-1 at ¶¶12-16.] In any event, a review of his CV reveals that Bailey has conducted more than 2,000 specialized RV and bus appraisals, been retained

as an expert in number of similar appraisal and defect cases, and has been in the RV industry for more than 50 years. [DE 53-2.] This experience makes him more than qualified to testify as an expert under Rule 702.

## Appraisal/Diminished Value Report

Bailey has provided three expert reports. The first of Bailey's reports is entitled an "Appraisal/Diminished Value Report." [DE 26-2.] The report states that the "fair market value determinations will be determined as of the day of purchase." [DE 26-2 at 11.] Noting that the purchase price of the RV was $292,559.20, and given all of the defects identified by Baily, he opines that its fair market value at the time was actually only $125,000, resulting in a diminished value of $167,559.20. [DE 26-2 at 32-33.]

Thor argues that this report should be excluded because the measure of damages in the case is the cost of repair or replacement, not diminution of value. [DE 26-1 at 1, 15.] But Thor's argument does not reflect my disposition of Thor's summary judgment motion, resulting in the survival of the plaintiffs' claims for breach of the Texas Deceptive Trade Practices Act and breach of the implied warranty of merchantability. The attempts in Thor's limited warranty to limit remedies don't work against those claims, which are not based on the express warranty. And Thor itself acknowledges that under Indiana law, "the fair market value of the good as warranted at the time of acceptance less the fair market value of the good as received at the time of acceptance" is an available measure of damages for a breach of warranty. [DE 26-1 at 15, quoting

*Schroeder v. Barth, Inc.*, 969 F.2d 421, 423-24 (7th Cir. 1992) and I.C. §26-1-2-714(2).] So this argument doesn't support exclusion of Bailey's diminished value opinion.

Thor also challenges Bailey's valuation opinion as *ipse dixit* (basically Latin for "because I said so"), because Bailey summarily explains his valuation conclusion only as "[t]he inherent feeling belief a buyer mostly likely will pay." [DE 26-2 at 32.] Despite this impressionistic language, Bailey's approach is somewhat systematic. His appraisal report contains several lists of factors that can affect the value of an RV. [DE 26-2 at 5, 31.] Thor complains that some of the factors are irrelevant to Thor's manufacture of the RV or have no impact on fair market value at the time of delivery. [DE 26-1 at 4.] The lists Thor refers to are offered in the context of Bailey's explanation of general valuation principles. The lists are essentially background information for the reader that describe as non-exhaustive and as factors that can (and therefore may or may not) impact the value of a particular RV. In light of that explanation of their role and purpose in the valuation, that every factor in these lists is not applicable to the RV in this case is not a basis for finding Bailey's report to be unreliable.

One particular example of an irrelevant consideration highlighted by Thor is the raccoon damage that the RV incurred during its extended stay at a dealership for repairs. [DE 26-1 at 7.] In response, plaintiffs cite Bailey's affidavit, in which he explains his deposition testimony to mean that he "considered" the raccoon damage, but dismissed it from his appraisal and gave it no weight. [DE 33 at 20; DE 33-1 at 28.] The matter may be one for cross-examination, but does not compel the exclusion of Bailey's valuation report and opinion.

5

I find that Bailey's methodology and valuation opinions are reliable. Although Thor argues that Bailey's opinion fails to show how he arrived at the fair market value and diminished value calculations, and instead simply provided a conclusory number, I disagree. In his Appraisal/Diminished Value Report, Bailey set forth 15 forces that can affect the value of an RV (including, among others, deterioration of constructed material, the existence of defects and malfunctions, and time out of service which could substantially impair the use or value of the RV), he defined an appraisal, he set forth the accepted methods to determine fair market value (FMV), he consulted sources such as the NADA (National Automobile Dealer Association) guide book which is published and an accepted guideline, he defined diminished value, and he then laboriously set forth the condition of everything from the siding on the exterior to the beds on the interior. [DE 26-1 at 5-21.]

Thor does not like Bailey's deposition testimony that his valuation "is a combination of all the factors" that he considers. [DE 26-1 at 5-7; DE 26-3 at 64.] But that is kind of how an appraisal works. As several other courts have recognized, appraisal is an art, not a science. *See Hawthorne Partners v. AT&T Technologies, Inc.*, 1993 WL 311916, at *4 (N.D. Ill. Aug. 11, 1993) (holding appraisal is not a branch of social science, "[a]ccordingly, in ruling on the admissibility of an appraisal expert's opinions, the court need not apply the same standards of methodological rigor required of social scientific inquiry"); *In re Bucktown Station, LLC*, 2011 WL 3651336, at *3 (N.D. Ill. Aug. 18, 2011) ("Expert appraisals are based on a recognized art, not science; and on experience, not a crystal ball.").

6

Another court in this district recently dealt with a similar challenge to a valuation opinion by Bailey in an RV case, and found it was admissible:

> Mr. Bailey's approach may not have been "scientific," but it was specialized as well as technical, which is allowable under Rule 702. See *Lees v. Carthage Coll.*, 714 F.3d 516, 524-25 (7th Cir. 2013) ("Rule 702 . . . does not condition admissibility on the state of the published literature, or a complete and flaw-free set of data.") As noted recently by a district court within this circuit when addressing an insurance field adjuster's challenged methodology:
>
> The Seventh Circuit has cautioned that the test for reliability for nonscientific experts is flexible. Unlike scientific or technical experts, whose hypotheses can be tested or subjected to peer review and whose methods can be measured against specific industry standards, an insurance adjuster and appraiser cannot be so mechanically scrutinized. [The field adjuster's] opinions rely on his experience, and expert testimony is not reliable simply because it is founded on [a witness's] experience rather than data; indeed, Rule 702 allows a witness to be qualified as an expert by knowledge, skill, experience, or education. *Church v. Church Mut. Ins. Co.*, 13 C 1625, 2016 WL 772787, at *4 (N.D. Ill. Feb. 29, 2016).

*Hoopes v. Gulf Stream Coach, Inc.*, No. 1:10-cv-365, 2016 WL 1165683, at *10 (N.D. Ind. Mar. 25, 2016). I concur with this analysis and conclusion about Bailey's testimony. Because Bailey made his valuation based upon an investigation of the RV's condition, and upon his experience in the industry and as an appraiser, his valuation methodology is reliable. Ultimately, like the court found in *Kuberski v. Allied Recreation Group, Inc.*, 2017 WL 6765342, at *7 (N.D. Ind. Nov. 7, 2017), the challenge to Bailey's "opinions relating to the valuation of the Subject RV attacks the substance of his conclusions rather than the reliability of the methodology he used, and the former (unlike the latter) is something for the jury to consider."

The next consideration is whether Bailey's opinions are relevant and will assist the jury in determining Plantiffs' damages. Such an opinion is relevant if it is likely to "'assist the trier of fact to understand the evidence or determine a fact in issue.'" *Hoskins v. Gunn Trucking*, 2010 WL 4000123, at *13 (N.D. Ind. Oct. 12, 2010), quoting *United States v. Hall*, 93 F.3d 1337, 1342 (7th Cir. 1996). In this case, Bailey opines that the RV's diminished value (or the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they were as warranted), is $167,559.20. [DE 26-2 at 32.] To the extent Thor argues that this opinion is irrelevant because the proper measure of damages is cost of repair, not diminished value, I have already explained that position does not survive my summary judgment ruling.

Thor argues that Bailey's opinion cannot assist the jury in determining Plaintiffs' damages because Bailey "does not provide, either in his report or during his deposition, any explanation of the weight he gave to any particular factor for determining an RV's value listed in his report." [DE 26-1 at 7.] I don't see why the jury could not adjust the diminished value of the RV if it found that Thor's warranty did not cover all of the defects enumerated in Bailey's report, or that some of the defects should not be considered for some reason. It seems to me that Thor's concerns "are best considered at trial, in the context of cross-examination, rather than at the present stage, for the purpose of excluding [expert] testimony altogether." *Coachmen Indus., Inc. v. Kemlite*, 2008 WL 4858385, at *12 (N.D. Ind. Nov. 10, 2008).

8

The cases cited by Thor in support of this argument are easily distinguishable. In *Zimmer, Inc. v. Stryker Corp.*, 2018 WL 276324, at *3-4 (N.D. Ind. Jan. 3, 2018), the Court excluded a damages expert's lost profits calculations in an action for breach of a non-compete agreement because the expert solely attributed lost revenues and profits to the defendants' alleged wrongdoing without ever considering the possibility that the lost revenues and profits flowed from other events. Another case cited by Thor is an antitrust case involving an expert study about lost profits that did not "establish any variation in the outcome depending on which acts of AT&T were held to be legal and which were illegal." *MCI Communications Corp. v. American Tel. & Tel. Co.*, 708 F.2d 1081, 1163 (7th Cir. 1983). These cases involve completely different factual scenarios that have no bearing on the case before me now, involving an expert opinion on damages for breach of warranty in a defective goods case.

I do think that Bailey's valuation opinions are relevant and will assist the trier of fact in this case. Thor's challenges to the relevance and weight of various valuation factors are matters that can be explored on cross-examination of Bailey as a trial witness as pertinent to his credibility with the jury and the weight to be given his opinion.

### Investigation Report of Alleged Manufacturer Defects and Infrared Thermography Report

Bailey's other reports are a Report of Alleged Manufacturer Defects and an Infrared Thermography Report. [DE 26-4 and 26-8.] The Alleged Manufacturer Defects report addresses 13 "owner issues" with the RV, showing that 9 are "confirmed" by Bailey's inspection. [DE 26-4 at 5-6.] Thor seeks the exclusion of Bailey's opinions on

9

"any purported defect or issue that was reported to Thor outside the 90-day warranty period, or that relates in any way to the damage to the RV caused by the raccoons." [DE 26-1 at 20.] The argument is unpersuasive because, as I noted earlier, Thor does not address the question based on what evidence is pertinent to plaintiffs' surviving claims for breach of the Texas Deceptive Trade Practices Act and breach of the implied warranty of merchantability. Because Thor does not approach the admissibility of Bailey's defect opinions from the right starting point, I will not analyze the issues based on the present motion, which does not offer a basis for exclusion of the evidence.

Leaky slide-outs are one of the 12 "owner issues" the Alleged Manufacturer Defects Report addresses. [DE 26-4 at 6.] Bailey reports that his investigation confirmed that "[t]here was water intrusion at all three slide outs." [*Id*.] The third report contains Bailey's explanation of his use of an infrared thermography imaging camera to "[s]can and document by Infrared Thermography the existing condition of the inside ceiling, walls and slide outs for new water intrusion" after applying a pressure washer to the RV's exterior. [DE 26-8 at 7.]

Thor challenges both reports on the ground that Bailey's method for testing the water-tightness of the RV's slide-out seals was unreliable, for the following reasons. Bailey used the Andersen's son-in-law (an untrained layman) to conduct the testing using pressure-washing (against the owner's manual's directives) with a high-pressure tip, by spraying directly at the slide-outs' seals from as close as a foot. [DE 26-1 at 21.] The parties engage in a battle of photographs to show the distance and angle of the spray applied to the RV's slide-out seals, creating a factual dispute I'm in no position to

decide.  Thor maintains that Bailey's testing method did not accurately replicate normal wet weather conditions. Plaintiffs respond that the pressure washing test reasonably replicated car wash conditions, and was not intended to simulate a rainstorm.  [DE 33 at 3.]  The Infrared Thermography report indicates as much, describing the testing as "a method with water simulating what is at a typical Car/RV wash facility…or the way RV dealers typically wash there (*sic*) for-sale RVs."  [DE 26-8 at 7.]

In my view, Thor's critique of Bailey's method for determining whether the slide-outs leaked does not demonstrate unreliability that requires exclusion of his results and opinion.  Evidence is available to demonstrate for a jury what Bailey did with the power washer.  The testing produced simple results stating whether there was or was not water intrusion in particular areas with the slide-out extended and with it retracted.  [DE 26-8 at 11.]  In 6 instances, water intrusion was noted. [*Id*.]  In the other 18, no water intrusion was found.  [*Id.*]  Thor does not challenge the use of or reliance on Thermography or the accuracy of the conclusions as to where water intrusion occurred. Thor's challenge to Bailey's method also rings a bit false in light of Bailey's affidavit attesting that, among the more than a dozen times he's served as Thor's expert, he has performed water tests at least twice in the same manner using a power washer. [DE 33-1 at ¶¶13, 16.]

No complex scientific or even technical methods or analysis were employed in performing the test or determining its results – water was sprayed, water leaked in some places but not others.  Thor is free to challenge the weight of this evidence by offering its own evidence about the comparative force of rainwater versus car washes,

11

and whether the testing even accurately replicated the force of a car wash. These are questions I can't (and need not) determine on the record before me. Thor was also free to conduct its own testing by one of the methods it now argues were preferred. Whether or not the leaks that occurred demonstrated a breach of the warranty of merchantability would be a question for the jury. Thor has not persuasively shown that Bailey's testing and its results are irrelevant, unreliable or unhelpful.

**ACCORDINGLY:**

Defendant Thor Motor Coach's Motion to Exclude the Opinions of Tom Bailey [DE 26] is DENIED.

**SO ORDERED on July 11, 2019.**

	/s/ Philip P. Simon
**JUDGE**
**UNITED STATES DISTRICT COURT**